IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TODD STEVEN ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.   15-cv-980-JPG-SCW |
| | ) |
| EMMANUEL AFUWAPE, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

WILLIAMS, Magistrate Judge:

INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, *pro se* Plaintiff Todd Steven Adams, currently released from prison, filed his complaint against Dr. Afuwape for deliberate indifference to his serious medical needs.   Specifically, Plaintiff alleges that while he was housed at Vandalia Correctional Center, Dr. Afuwape improperly refused to renew his pain medication on August 3, 2015 causing him to be in pain and suffer symptoms of withdrawal from his previously-prescribed pain medications.   Plaintiff's complaint also alleges that Defendant Afuwape failed to provide him with a hearing aid and improperly changed his inhaler medication (Doc. 8).

This matter is currently before the Court on Defendant Afuwape's motion for summary judgment on the basis of Plaintiff's failure to exhaust his administrative remedies (Docs. 31 and 32).   Plaintiff has filed two responses to the summary judgment

motion (Docs. 42 and 53). The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**. Based on the following, it is **RECOMMNEDED** that the Court **GRANT** Defendant's motion for summary judgment (Docs. 31 and 32).

## FACTUAL BACKGROUND

Plaintiff filed his complaint on September 3, 2015 alleging a claim of deliberate indifference against Dr. Afuwape. As narrowed by the Court's threshold order (Doc. 8) Plaintiff alleges that he was previously prescribed pain medication by Vandalia's doctor, Dr. Caldwell, with a six month prescription of Ultram/Tramadol (Doc. 8, p. 1-2). However, Dr. Afuwape refused to refill the pain medication prescription on August 3, 2015 (*Id.* at p. 2). As a result, Plaintiff has nothing to relieve his pain except for Ibuprofen, which Plaintiff alleges is not effective (*Id*. at p. 2). In addition to his pain, Plaintiff alleges that he suffers from withdrawal due to the discontinuing of his previously-prescribed medication (*Id.*).

In addition to his claim regarding his pain medication, Plaintiff's complaint alleges that Afuwape changed his inhaler, which he uses for breathing troubles, to Xopenex, which Plaintiff alleges causes side effects including heart palpitations, increased pain, and trouble breathing (Doc. 8, p. 2). Plaintiff asked for a change in the prescription to Albuterol but never received the change (*Id*.). Plaintiff eventually stopped taking the medication because of the side effects (*Id*.). Plaintiff also alleges that

he requested a hearing aid, but never received one (*Id*.).

In response to Plaintiff's complaint, Defendant Afuwape filed the pending motion for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies (Docs. 31 and 32).   Defendant points to several grievances written by Plaintiff in August 2015 regarding his medical care which were not fully exhausted prior to Plaintiff filing his complaint.   Plaintiff initially wrote a grievance dated August 3, 2015 which stated that he was cut off from his pain medication, Ultram, on that date (Doc. 32-2, p. 1).   Plaintiff noted that all he was allowed to take was Ibuprofen, which does not work well for his pain (*Id*.).   Plaintiff indicated that the Ultram also did not work well for his pain, but that it was the only medication prescribed for nine months and noted that he took Norco and Valium prior to being incarcerated (*Id*. at p. 2).   Plaintiff also noted that the "new doctor" acted "like he needs a constant personal assistant to render constant healthcare assistance to him and also help him walk." (*Id*.).   This grievance was received by the counselor on August 6, 2015 and denied on September 2, 2015, noting that doctor's orders were being followed and that the doctor decides what medication to prescribe based on his assessment of the condition. (Doc. 32-2, p. 1).   There is no indication in the record that Plaintiff appealed the grievance to the grievance officer.

Plaintiff submitted a second grievance on August 5, 2015 (Doc. 32-1, p. 1).   That grievance alleged that he was called to the healthcare unit by Afuwape on August 5, 2015, noting that Afuwape was "a joke" (*Id*.).   Plaintiff indicated in his grievance that the doctor cut off his medication two days ago and he has been going through

withdrawals since that time and that Afuwape wants Plaintiff to start a new medication (*Id.* at p. 2). He also alleged that he fell in the yard one week prior to his grievance but Afuwape refused to treat his injuries (*Id.*). Plaintiff's grievance was received by his counselor on August 6, 2015 and denied on September 2, 2015, noting that Plaintiff was given a thorough exam on both August 3, 2015 and August 12, 2015 (*Id.* at p. 1). There is no indication in the records that Plaintiff pursued the grievance through the rest of the grievance process.

Plaintiff next wrote a grievance on August 12, 2015 again about treatment he received from Afuwape (Doc. 32-3, p. 1). Plaintiff alleged that he saw Afuwape on August 12, 2015 and that he gets called to the healthcare unit for single subjects, instead of being called to the healthcare unit once for all of his concerns (*Id.*). Plaintiff alleged he went to the healthcare unit once to the asthma clinic for his medication and then the next time to the blood pressure clinic for hsi medication for that condition (*Id.*). Plaintiff's grievance also alleged that Afuwape denied Plaintiff a hearing aid or a referral to a hearing doctor (*Id.* at p. 2). He again stated that Afuwape took away his pain medication (*Id.*). This grievance was received by the counselor on August 17, 2015 and denied on September 3, 2015 as a duplicate grievance (Doc. 32-3, p. 1). There is no indication in the records that Plaintiff pursued the grievance further.

Plaintiff also submitted a grievance on August 26, 2015 regarding his medical care (Doc. 32-4, p. 1). Plaintiff alleges in that grievance that he has continued to have pain management issues since November of 2014 and that Dr. Caldwell and Dr. Afuwape

have not provided him with proper treatment (*Id.*). Plaintiff indicated that he had numerous forms of pain, from his arms, to back and head (*Id.* at p. 2). He noted that Afuwape refused to continue with medication that Caldwell previously prescribed, although he claimed that medication was inadequate as well (*Id.*). He also claimed that he needed an Albuteral inhaler but his request was denied by both Caldwell and Afuwape (*Id.*). That grievance was received by his counselor on September 8, 2015 and denied the same day as a duplicate grievance (Doc. 32-4, p. 1). There is no indication in the record that the grievance was pursued further.

A review of the ARB's grievance records shows that none of these grievances were received by the ARB (Doc. 32-5). Plaintiff's response first argues that grievances he filed against Dr. Caldwell should apply to Afuwape as well because he took over the position from Caldwell. Plaintiff also argues that Afuwape is the "new doctor" he referred to in his August 2015 grievances and that he filed an earlier grievance against Afuwape on June 24, 2015. That grievance claimed that the "new doctor" who replaced Caldwell refused to provide him with a knee brace and told Plaintiff that he would not help him with his chronic pain (Doc. 42, p. 21). The grievance indicated that the doctor told Plaintiff that he would not renew his pain medication prescription and that the prescription would run out in August (Doc. 42, p. 22). That grievance was received by the counselor on June 29, 2015 and denied the same day (Doc. 42, p. 21). The grievance was also denied by the grievance officer on July 17, 2015, as Plaintiff was receiving medical care, and that decision was concurred with by the chief administrative officer on

July 20, 2015 (Doc. 42, p. 23).   The grievance was received by the ARB on August 3, 2015 but was not denied until March 23, 2016 (Doc. 42, p. 5).   Plaintiff argues that since the ARB waited over six months to deny his grievance, their response was untimely and thus his complaint was properly brought before the Court.

Plaintiff filed a second response to the complaint in which he again states that the grievance procedure was properly exhausted by the ARB's failure to timely respond to his June 24, 2015 grievance (Doc. 53, p. 6).   He claims that the failure to respond in a timely matter should deem the grievance denied by default.   Plaintiff also states that he filed a grievance on May 14, 2016 to satisfy the Defendant's claim that the grievance process is now exhausted, although Plaintiff does not attach the grievance to his new response.

## LEGAL STANDARDS

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Dynegy Mktg. & Trade v. Multi Corp.,* **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).**  *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005).**   A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, **477 U.S. at 250** (*quoting* **FED. R. CIV. P. 56(e)(2)).** A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when it presents definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**

A. **Illinois Exhaustion Requirements**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first

require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code**

**§504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a

grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.*

The grievance form must:

> contain factual details regarding each aspect of the offender's complaint,
> including what happened, when, where, and the name of each person who
> is subject of or who is otherwise involved in the complaint.   The provision
> does not preclude an offender from filing a grievance when the names of
> individuals are not known, but the offender must include as much
> descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**   "The Grievance Officer shall [then] consider the

grievance and report his or her findings and recommendations in writing to the Chief

Administrative Officer...[who]shall advise the offender of the decision in writing within

2 months after receipt of the written grievance, where reasonably feasible under the

circumstances."   **20 Ill. Admin. Code §504.830(d).**   If the inmate is not satisfied with

the Chief Administrative Officer's response, he or she can file an appeal with the

Director through the Administrative Review Board ("ARB").   The grievance procedures

specifically state, "[i]f after receiving the response of the Chief Administrative Officer,

the offender still feels that the problem, complaint or grievance has not been resolved to

his or her satisfaction, he or she may appeal in writing to the Director within 30 days

after the date of the decision.   Copies of the Grievance Officer's report and the Chief

Administrative Officer's decision should be attached."   **20 Ill. Admin. Code**

**§504.850(a).**   "The Administrative Review Board shall submit to the Director a written

report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The

Director shall review the findings and recommendations of the Board and make a final

determination of the grievance within 6 months after receipt of the appealed grievance,

where reasonably feasible under the circumstances. The offender shall be sent a copy of

the Director's decision." **20 Ill. Admin. Code §504.850(f).**

ANALYSIS

Here, the undersigned **RECOMMENDS** that the Court find that Plaintiff failed to

exhaust his administrative remedies prior to filing suit. The evidence before the Court

shows that Plaintiff filed four grievances in August regarding the medical treatment he

received from Afuwape.[1] All four grievances allege that Afuwape inappropriately

discontinued his pain medication treatment, the main claim in his complaint. His

August 12, 2015 grievance also includes complaints regarding Afuwape's denial of a

hearing aid for Plaintiff, another part of Plaitniff's deliberate indifference claim against

Afuwape, and his August 26, 2015 grievance alleged that Afuwape denied Plaintiff his

request for an Albuteral inhaler, also part of his deliberate indifference claim. All four

of the grievances were filed in August 2015 and were denied by the counselor in early

September 2015 (September 2, 3, and 8, respectively). There is no indication that

---

[1] While Defendant argues that Plaintiff's first two grievances from August, his August 3, 2015 grievance and his August 5, 2015 grievance do not grieve claims against Afuwape with the proper particularity, the undersigned rejects that argument. Plaintiff's August 3, 2015 grievance, although it does not identify Aufwape by name, identifies the "new doctor" and Defendant acknowledges that he first met with Plaintiff on August 3, 2015. Thus, Plaintiff's identification of the "new doctor" is enough to put officials on notice that he is referring to Afuwape. Further, both the August 3, 2015 and the August 5, 2015 grievance both complain that he was cut off from his pain medication on August 3, 2015. Contrary to what Defendant argues, the grievances clearly grieves the inappropriate denial of his medication.

Plaintiff pursued these grievances past his counselor.

Plaintiff filed his complaint in this case on September 3, 2015, prior to receiving a response to is August 26, 2015 grievance, the same day as he received a response from his counselor for his August 12, 2015 grievance, and only one day after receiving a response from the counselor on his August 3, 2015 and August 5, 2015 grievances. The Prison Litigation Reform Act ("PLRA") requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until…[his] administrative remedies as are available are exhausted." **42 U.S.C. §1997e(a).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A prisoner must wait to bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)).** Here, Plaintiff did not wait to fully exhaust his August grievances prior to filing suit. He, instead, filed his complaint after only receiving a response from his counselor. Even had he submitted the grievances that he received from his counselor on September 22, 2015 to the grievance officer or the ARB, which Plaintiff does not allege he did and the evidence does not indicate that occurred, Plaintiff filed suit mere days after receiving his

grievances back from his counselor which would have not been enough time to allow the grievance officer to respond or for his grievances to be fully exhausted.   Plaintiff simply failed to exhaust his administrative remedies prior to filing suit.

Plaintiff does not deny that his August grievances were not properly exhausted prior to filing suit in September 2015.   Instead, Plaintiff argues that his claims against Afuwape were properly exhausted by a June 24, 2015 grievance that he claims was deemed exhausted when the ARB failed to respond to the grievance in a timely manner. Plaintiff's June 24, 2015 grievance does mention the "new doctor who replaced Dr. Caldwell" and indicates that the doctor refused to renew his pain medication which will run out in August 2015 (Doc. 32-5, p. 6-7).   The grievance does not include any complaints about his inhaler or hearing aids.   However, Plaintiff's June 24, 2015 grievance was not fully exhausted prior to Plaintiff filing his complaint.   Plaintiff did pursue the grievance through the institutional process and finished that process on July 20, 2015 when the grievance was denied by the chief administrative officer (See Doc. 32-5, p. 5) but the grievance was received by the ARB on August 3, 2015 and was still pending at the time Plaintiff filed his complaint in this Court on September 3, 2015. While Plaintiff argues that the ARB did not ultimately respond to his grievance in a timely fashion, the ARB has six months from the receipt of the grievance to respond, **20 Ill. Admin. Code §504.850(f),** and at the time Plaintiff filed his complaint the time to respond had not yet passed.   Thus, the undersigned finds that Plaintiff did not properly wait to see if the ARB would respond to his grievance in a timely manner before filing

his complaint.

Further, while Plaintiff argues that his grievances against Caldwell should also count as grievances filed against Afuwape, Plaintiff's complaint, as narrowed by the threshold order, focuses on specific acts that Afuwape took regarding Plaintiff's medical care. A review of the ARB records only shows one grievance related to past medical care and that was an 11/14/2014 grievance regarding Plaintiff's hearing aid (Doc. 32-5, p. 2, 18-21), a grievance filed long before Plaintiff first saw Afuwape in June 2015. Thus, that grievance could not have exhausted Plaintiff's claims against Afuwape. Plaintiff also argues that he has now exhausted his administrative remedies by filing a new grievance on the issues in May 2016. But exhaustion is a precondition to filing suit. Thus, Plaintiff must have completed the grievance process before filing his complaint. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004) (exhaustion is precondition to filing suit);** *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)).** As he did not, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's motion for summary judgment and **DISMISS** Plaintiff's complaint **without prejudice** for failure to exhaust his administrative remedies prior to filing his complaint.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies prior to filing suit, **GRANT** Defendant Afuwape's motion for summary judgment (Docs. 31 and 32), and **DISMISS without prejudice**

Plaintiff's claims against Afuwape.   Should this Report and Recommendation be adopted, Plaintiff's motions for summary judgment (Docs. 34 and 48) should be **DENIED AS MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **January 23, 2017**.


**IT IS SO ORDERED**.
DATED: January 5, 2017.

> */s/ Stephen C. Williams*
> STEPHEN C. WILLIAMS
> United States Magistrate Judge